UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROCKHILL INSURANCE COMPANY,

                             Plaintiff,

             -against-

ARCH SPECIALTY INSURANCE COMPANY,

                         Defendant.
----------------------------------------------------------------x

Civil Action No.

**COMPLAINT**

**M A D A M S / S I R S:**

        Plaintiff ROCKHILL INSURANCE COMPANY ("Rockhill"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant ARCH SPECIALTY INSURANCE COMPANY ("Arch"), alleges as follows:

### JURISDICTION AND VENUE

        1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000.00 exclusive of costs.

        2.     At all times hereinafter mentioned, Rockhill was, and still is, a stock insurance company organized under the laws of the State of Arizona, with its principal place of business located at 518 East Broad Street, Columbus, Ohio 43215.

        3.     At all times hereinafter mentioned, Rockhill was, and still is, an insurance company duly authorized to conduct business within the State of New York.

        4.     At all times hereinafter mentioned, Arch was, and still is, a stock insurance company organized under the laws of the State of Missouri, with its principal place of business located at 210 Hudson Street, Suite 300, Jersey City, NJ  07311-1107.

5.      At all times hereinafter mentioned, Arch was, and still is, an insurance company duly authorized to conduct business as a non-admitted insurer within the State of New York.

6.      This Court has venue over this matter pursuant to 28 U.S.C. § 1391; a substantial part of the events or omissions giving rise to the claim occurred in this District.

## SUBSTANTIVE ALLEGATIONS

**A.      The Insurance Policies**

7.      Rockhill issued a Commercial General Liability policy, No. GENL019436-01, with a policy period from April 13, 2018 to April 13, 2019, to 1 Seal USA, LLC ("1 Seal"), as the Named Insured (the "Rockhill Policy").

8.      The Rockhill Policy is subject to an Each Occurrence Limit of $1 million.

9.      The Rockhill Policy defines the terms "you" and "your" as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

10.      The Rockhill Policy contains an "Other Insurance" provision that provides, in relevant part as follows:

**b.      Excess Insurance**

**(1)** This insurance is excess over:

* * *

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

2

11.     Arch issued a Commercial General Liability policy, No. AGL0054720-00, with a policy period from July 3, 2018 to July 3, 2019, to A1 Mechanical Seal Inc. D/B/A Surface Depot Corp. ("A1"), as the Named Insured (the "Arch Policy").

12.     Arch issued the Arch Policy to A1 to its office located at 9 Fawn Hill Drive, Airmont, New York  10952.

13.     At all times herein mentioned, A1 was, and still is, a corporation organized under the laws of the State of New York, with its 25 Robert Pitt Drive, Office 206B, Monsey, New York  10952.

14.     Upon information and belief, the Arch Policy has an Each Occurrence Limit of $1 million.

15.     Upon information and belief, the Arch Policy contains a "Blanket Additional Insured Endorsement" that provides, in part, as follows:

> **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:
>
> **a.** In the performance of your ongoing operations or "your work", including "your work" that has been completed; or
>
> **b.** In connection with your premises owned by or rented to you.
>
> The person or organization does not qualify as an Additional Insured with respect to any independent act(s) or omission(s) of such person or organization.

16.     Upon information and belief, the Arch Policy contains a "Primary and Non-Contributory Insurance Where Required By Written Contract(s) Endorsement" that provides, in part as follows:

**d. Primary and Non-Contributing Insurance**

Where you are specifically required by a written contract to provide insurance that is primary and noncontributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

17.     The Arch Policy contains an "Other Insurance" provision that provides, in part, as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

18.     No part of "Paragraph **b.** below" applies when the Arch Policy is compared to the Rockhill Policy.

**B.    The Underlying Action**

19.     On or about August 1, 2018, Jack Adams ("Adams") commenced an action entitled Jack Adams v. 1128 36th LLC, Index No. 515713/2018, in the Supreme Court of the State of New York, County of Kings, by the filing of a Summons and Verified Complaint (the "Underlying Action.").

20.     On or about September 14, 2019 , 1128 36th LLC impleaded Apartment Developers, LLC and 1 Seal into the Underlying Action by the filing of a Third-Party Summons and Verified Third-Party Complaint.

21.     On or about November 26, 2019, Adams served and filed an Amended Verified Complaint in the Underlying Action that included Apartment Developers, LLC as a direct defendant.

22.     On or about April 9, 2021, 128 36th LLC impleaded A1 into the Underlying Action by the filing of a Second Third-Party Summons and Verified Second Third-Party Complaint.

23.     In the Underlying Action, Adams alleges he suffered bodily injury on July 16, 2018 while working on a construction project located at 1128 36th Street, in Kings County, New York (the "Project").

24.     In the Underlying Action, Adams alleges that he was lawfully working on the Project, when he was caused to fall from a ladder.

25.     In the Amended Verified Complaint in the Underlying Action, Adams alleges causes of action sounding in negligence and for violation of N.Y. Labor Law §§ 200, 240(1), and 241(6) and of the Industrial Code of the State of New York.

26.     In the Underlying Action, the Verified Third-Party Complaint alleges that "[i]f Plaintiff was injured as alleged in the complaint, it was due to the negligence and carelessness as aforesaid of the Third-Party Defendant 1 Seal USA, LLC, its agents, servants, and/or employees.

27.     In the Underlying Action, the Verified Third-Party Complaint alleges causes of action sounding in common law indemnification, contribution, contractual indemnification, and breach of contract for failure to obtain insurance coverage against 1 Seal.

28.     In the Underlying Action, 128 36th LLC alleges causes of action sounding in common law indemnification, contribution, contractual indemnification, and breach of contract for failure to obtain insurance coverage against A1.

29.     In his Verified Bill of Particulars, Adams alleges that he was injured in the course of his employment with A1.

30.     On July 16, 2018, Adams was directed by his supervisor, Odeon, another A1 employee, to tape the walls of the ramp leading to the basement as part of his work on the Project.

31.     Upon information and belief, Adams alleges that, to perform his task, Adams was directed by his supervisor to use a 14-16-foot straight aluminum ladder in order to access the top of the walls to perform the work; specifically, Adams alleges he was directed to tape the walls above the inclined concrete ramp leading into the basement of the building.

32.     Upon information and belief, Adams alleges that he was on the eighth or ninth rung of the straight ladder and doing his work at the top of the wall, and that the ladder slid out from underneath Adams and fell, causing Adams to fall from a height and down to the concrete ramp below.

C.     **The Contracts**

33.     On or about May 22, 2018, 1128 36th LLC, as Owner, and Apartment Developers LLC, as Contractor, entered into a Standard Form of Agreement Between Contractor and Owner, in connection with a construction project at the Project.

34.     Apartment Developers LLC, as Contractor, and 1 Seal, as Subcontractor, entered into an agreement for 1 Seal to perform work on the Project.

35.     Pursuant to the Subcontract, 1 Seal contractually agreed to perform fire stopping services – installing foam insulation for pipes in connection with work in the basement of the Project.

36.     1 Seal, as Contractor, and A1, as Subcontractor, entered into an agreement whereby A1 agreed to perform all obligations and work on the Project that 1 Seal agreed to perform for Apartment Developers LLC (the "A1 Subcontract").

37.     1 Seal did not perform any of the work under the Subcontract – it contracted out all of its obligations to A1.

38.     In connection with the A1 Subcontract, on July 5, 2028, 1 Seal and A1 entered into a "Subcontract Agreement Rider (Contractor/Subcontractor)" (the "Rider").

39.     The Rider provides, in part, as follows:

2. **Insurance.**  The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable . . . .

40. The Rider provides, in part, as follows:

2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations.  The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

41.     The Rider provides, in part, as follows:

2.4. Unless otherwise stipulated in the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:

a ) Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence , $2,000,000 aggregate and $2,000,000 Products completed operations aggregate with either per project or per location endorsement for property damage and bodily injury; . . . .

7

42.     1 Seal subcontracted all of its work under the Subcontract to A1.

43.     Upon information and belief, the ladder and all other equipment  or other materials, such as fire proofing or fire stopping materials, supplied to Adams or that was supposed to be supplied to Adams for the Project was supplied by A1.

44.     1 Seal did not supervise or control the work being performed by A1 on the Project.

C.     **Tenders and Responses**

45.     By letter February 16, 2021, the law firm of Alahverdian Van Leuvan, as counsel for 1 Seal, tendered the defense and indemnity for the Underlying Action to A1 and Arch, including as an additional insured under the Arch Policy.

46.     By letter dated March 15, 2021, Arch disclaimed coverage to 1 Seal based on the following; (1) A1 breached the notice provisions of the Arch Policy by filing to provide timely notice of the alleged occurrence; (2) coverage is or may be barred by the Classification Limitation Endorsement; (3) coverage is barred by a Workers Compensation and Similar Laws exclusion in the Arch Policy; (4) coverage is barred by the Employer's Liability exclusion in the Arch policy; and (5) any claim for contractual indemnification against A1 for contractual indemnification would be denied based on the Contractual Liability exclusion in the Arch Policy.

47.     The March 15, 2021 letter did not provide any additional identified reasons for disclaiming coverage to 1 Seal.

48.     By letter dated January 8, 2024, the attorneys for Rockhill tendered a final demand to Arch demanding that Arch defend and indemnify 1 Seal as an additional insured on the Arch Policy, and the letter specifically warned that Arch "should consider this letter Arch's last chance to avoid coverage litigation."

49.     Arch has not provided a written or oral response to the January 8, 2024 letter.

50.     Although duly requested, Arch failed and refused to participate in the defense of 1 Seal for the Underlying Action or acknowledge a duty to defend.

51.     As such, Rockhill was required to drop down and provide a defense to 1 Seal for the Underlying Action.

52.     Pursuant to N.Y. Ins. Law § 1213 (McKinney), Rockhill is entitled to recovery of attorney's fees from Arch incurred in prosecuting this action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

53.     Rockhill repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "52" of this Complaint as if more fully set forth herein.

54.     1 Seal qualifies as an additional insured under the Arch Policy for the claims alleged in the Underlying Action.

55.     Arch owes 1 Seal a duty to defend and indemnify for the claims alleged in the Underlying Action.

56.     Although duly demanded, Arch has failed and refused to provide a primary defense and indemnification to 1 Seal for the claims alleged in the Underlying Action.

57.     Rockhill seeks a determination of its rights with regard to the Arch Policy, including a declaratory judgment that Arch was and is required to defend and indemnify 1 Seal for the Underlying Action under the Arch Policy and that such coverage applies on a primary basis before coverage under the Rockhill Policy applies to 1 Seal.

## AS AND FOR A SECOND CLAIM FOR RELIEF

58.     Ohio Casualty repeats, realleges, and reiterates each and every allegation

contained in paragraphs "1" through "57" of this Complaint as if more fully set forth herein.

59.     Arch owed and owes 1 Seal a primary duty to defend under the Arch Policy for the claims alleged in the Underlying Action.

60.     Although duly demanded, Arch has failed and refused to provide a primary defense and indemnification to Arch for the claims alleged in the Underlying Action.

61.     The Rockhill Policy applies excess of the Arch Policy.

62.     As a result of Arch's failure to acknowledge that it owes a primary duty to indemnify 1 Seal, Rockhill was required to drop down and provide and pay for the defense of the claims alleged in the Underlying Action against 1 Seal.

63.     As a result of the foregoing, Rockhill is entitled to a money judgment against Arch in an amount to be determined by the Court, plus interest at the rate of 9% per annum.

**WHEREFORE**, plaintiff ROCKHILL INSURANCE COMPANY demands judgment as follows:

A.     On the First Claim for Relief, a declaratory judgment determining the respective rights and obligations of plaintiff ROCKHILL INSURANCE COMPANY and defendant ARCH SPECIALTY INSURANCE COMPANY with respect to their liability insurance coverage obligations for 1 Seal for the Underlying Action, including a declaratory judgment that defendant ARCH SPECIALTY INSURANCE COMPANY is required to defend and indemnify 1 Seal for the Underlying Action, and that such coverage for 1 Seal applies on a primary basis before coverage under the Rockhill Policy applies to 1 Seal;

        B.      On the Second Claim for Relief, a money judgment in favor of plaintiff ROCKHILL INSURANCE COMPANY and against defendant ARCH SPECIALTY INSURANCE COMPANY, in an amount to be determined by the Court, plus interest; and

        C.      Granting plaintiff ROCKHILL INSURANCE COMPANY recovery of the costs and disbursements of this action, including attorneys' fees, together with such other and further relief as this Court deems just and proper.

Dated:   White Plains, New York
        March 6, 2024

                         Yours, etc.,

                         JAFFE & ASHER LLP

                         By: _____
                            Marshall T. Potashner, Esq.
                         Attorneys for Plaintiff
                         ROCKHILL INSURANCE COMPANY
                         445 Hamilton Avenue, Suite 405
                         White Plains, New York 10601
                         (212) 687-3000